**SUTTON et al. v. LEWIS.**

No. 14585.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 26, 1943.

Rehearing Denied Jan. 7, 1944.

———◆———

Donald & Donald and Joe H. Cleveland, all of Bowie, for appellants.

T. H. Yarbrough and Benson & Benson, all of Bowie, for appellee.

McDONALD, Chief Justice.

Appellants were plaintiffs and appellee was defendant in the court below. Certain special exceptions directed at plaintiffs' petition were sustained by the trial court. Plaintiffs declined to amend, and the suit was dismissed. Plaintiffs appeal.

Plaintiffs' petition contains two counts. The first is in the usual form of trespass to try title. In the second count plaintiffs specially. plead their title to the land in question. The land constituted the homestead of plaintiffs' deceased mother. It was her separate property, she having acquired it after the death of plaintiffs' father. The administrator of her estate undertook to sell the land. The petition sets out verbatim the various proceedings had in the probate court, including the application for administration, the application to sell the land, the order of sale, the sale bond, the report of sale, the confirmation of sale, and other documents not necessary here to mention, and the petition alleges that the administrator executed and delivered a deed to the purchaser. The theory of plaintiffs' suit is that the sale proceedings are void, and are subject to collateral attack in this suit. Their contentions, and the nature of the special exceptions urged by defendant, are reflected by appellants' points of error, and the argument made thereunder, which we shall discuss in detail.

Appellants make no point here of the fact that their petition contained a general count in trespass to try title, against which no exceptions were· urged,

recognizing, doubtless, that having pleaded their title specially, the facts so pleaded specially, and not the general allegations of ownership, must be looked to in passing upon the exceptions. Byerly v. Camey, Tex.Civ.App., 161 S.W.2d 1105, writ of error refused for want of merit, and cases there cited.

Under their first four points of error appellants contend: (1) The order of sale of the probate court was void because the sale of the homestead was for the purpose of paying general debts of the deceased. (2) Even though there was a valid purchase money debt against the homestead, the probate court had no power to order its sale to pay the purchase money debt where other debts appeared in the exhibit attached to the application for order of sale, because in such case the sale then became one for the purpose of paying general debts of the estate. (3) Even if there was a valid debt against the homestead, the probate court had no power to order its sale in the absence of a proper claim prepared, sworn to, presented, approved, docketed, allowed, and classified, in conformity with the statutes relating to claims against the estates of deceased persons. (4) Where the fact of homestead was shown in any of the probate proceedings, the purchaser from the administrator was charged with notice of the rights of the persons entitled to the homestead, so that the probate court had no jurisdiction to order sale of the homestead.

The petition alleges that the property was the homestead, and that the deceased owner left surviving her some minor children. The allegations to such effect are treated as being true in passing upon the exceptions to the petition. We shall look to the actual language of the various applications and orders in probate, since they are copied in full in the petition.

In his application to sell the property, the administrator represents that there are certain debts against the estate, including a debt in excess of $900, payable to the heirs of J. A. Cooper and M. F. Cooper, a payment upon which will be due November 1, 1939, and that the administrator has no funds with which to pay same; that there is an indebtedness to J. A. Burgess for funeral expenses in the sum of approximately $90, and a debt to Lyon & Matthews Lumber Company in the sum of approximately $60 which was incurred for repairs and improvements placed upon real estate owned by the deceased; that all of such debts are past due and unpaid; and that it is necessary to sell the real estate involved in the present suit in order to pay said debts. The application contains a description of the land. It represents that the sale should be made privately and for cash. It recites that a full exhibit is attached. It concludes with a prayer that notice be given, that upon hearing, the sale be ordered, "and for such other and further order as to this court may seem proper in the premises".

Attached to the application is an exhibit, verified by affidavit of the administrator, which purports to show the condition of the estate. It lists the property on hand as the land herein involved, valued at $1,850, and four items of personal property, valued at a total of $165. It lists the debts of the estate as being an item to Lyon & Matthews Lumber Company in the amount of $60.68, funeral expenses to J. A. Burgess in the amount of $90, "Cooper Heirs" (Land note), $954, and J. D. Sullivan (nature of indebtedness not shown), $150. The exhibit contains the following recital: "None of the above claims have been approved or established by suit, but they have not been rejected; that each of said claims above listed are known to your administrator to be just and due." The exhibit shows an estimate of $200 for administration expenses. It further recites that the real property described was the homestead of the deceased, and that it is being used by her surviving husband and minor children as their homestead, that the note due to the Cooper Heirs represents a part of the purchase price of said property, and that such property is encumbered with a lien to secure payment of such note.

The order of sale thereafter made by the probate court reads in part as follows: "On this 23rd day of November, 1939, there came on to be heard in the above styled and numbered cause the application of J. D. Sullivan, Administrator, for the sale of Real Estate belonging to the said Estate for the purpose of payment of debts, and charges against such property and against such Estate; and it appearing to the Court that a necessity exists for such sale, and that a sale is necessary for the preservation of said Estate in that an indebtedness of $954.00 which is secured by a Lien upon the Real Estate owned by such Estate is at this time past due, and must be paid in order to prevent a fore-

closure and loss of such property; and it appearing further that the property described in said application is the only property owned by such Estate of sufficient value to raise the needed funds, it is, therefore, considered that such sale should be ordered as requested in such Application."

It is then ordered that the real estate, describing it, be sold at private sale for cash.

Thereafter the administrator reported the sale to the probate court. On December 14, 1939, the probate court made its order confirming the sale. On the same day the administrator executed and delivered to the purchaser an administrator's deed conveying the property for a recited consideration of $1,850 in cash, which was the purchase price reported to and confirmed· by the court.

■■ Appellants contend that the probate proceedings show upon their face that the sale was made for the ·purpose of paying the general debts of the estate, and that the sale is therefore void. Appellants rely particularly upon the holding in Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 66 A.L.R. 916. Cline v. Niblo involved a case where the homestead was sold by the administrator for the purpose of paying nothing but general debts against the estate. It is expressly said in that case that none of the debts constituted a charge against the homestead. But the opinion clearly recognizes that the probate court has jurisdiction to sell the homestead for the purpose of paying a debt which constitutes a valid lien against the homestead, and further holds, without any doubt, that it is the probate court which must determine whether a given debt constitutes a valid charge against the homestead.

There is no question that the probate court has jurisdiction to sell the homestead to pay a debt which constitutes a valid lien against the homestead. The rule is thus stated in Connor Bros. v. Williams, 130 Tex. 572, 112 S.W.2d 709, 711: "While the homestead may not be sold for payment of general debts of the estate, it may be sold for the payment of a debt secured by a valid lien against it, and the exclusive jurisdiction for making the sale of the homestead for such latter purpose, while administration is pending, is in the probate court."

In the case before us the application seeks a sale of the property for the purpose of paying both a debt secured by a lien against the homestead, and other debts not secured by liens against the homestead. The order of the probate court, however, is on its face based only upon the necessity to sell in order to satisfy the secured debt, and to prevent a foreclosure thereof.

■ If the homestead is sold for the purpose of paying a debt secured by a lien against it, and if the property is sold for more than enough to satisfy the lien, the excess must be paid to the administrator, who is the only person authorized to receive it. He then holds it subject to the lawful claims of those who may be entitled to it. If the minors were entitled to assert any claims to the excess in the case before us, such as a claim for allowances in lieu of homestead and exempt property, there was nothing in the order of sale which undertook to deprive them of such rights, nor was there anything in the remainder of the sale proceedings, either the report of sale, confirmation of sale, or the administrator's deed, which served in any way to defeat the minor's rights in such respects, if any they had. The sale cannot be attacked for a failure of the administrator' to make proper disposition of the money· received from the sale, nor is the purchaser under responsibility to see to the proper disposition of the purchase money which he pays to the administrator. The ‘same rule applies here as in the case where a purchase is made from an executor who has authority to sell. In Blanton v. Mayes, 72 Tex. 417, 10 S.W. 452, 454, it is said: "* * * in order that appellee should be entitled to the land under his purchase from the executor, it was not necessary that he should show that the latter properly appropriated the money paid by him for the land. It was sufficient that he showed a state of facts that gave the executor power to sell."

The same ruling is made in Masterson v. Wingate, Tex.Civ.App., 151 S.W.2d 956, 959, writ of error refused for want of merit, where it is said: "If, as appellants contend, it was proved that testator's independent executor applied the purchase price received for the sale of the 128-acre tract to the payment of debts for which it was not liable, that does not concern the purchaser, nor invalidate his purchase. His concern is merely that he show 'a state of facts that gave the executor power to sell.'"

Nor do we think that the purchaser was required to look beyond the recitals of the order of sale with respect to the existence and validity of the charge against the homestead. The order recites that there is an indebtedness, that it is secured by a lien against the property, that it is past due, and that a sale is necessary in order to prevent a foreclosure. The questions concerning the existence of the indebtedness and lien were within the jurisdiction of the probate court to determine. He did determine them, according to the recitals in his order. Parties cannot, in this collateral attack, undertake to go behind his order and prove that there was in fact no lien against the property. The situation comes squarely within the rule announced in Cline v. Niblo [117 Tex. 474, 8 S.W.2d 638, 66 A.L.R. 916], as follows: "If the record shows that the questions whether or not the property was homestead, or that the debts involved were chargeable against the homestead, then these issues, other requisites being present, are foreclosed, except upon direct attack upon justiciable grounds."

Although we do not think it controlling here, we observe that appellants in the case before us do not allege that there was in fact no lien against the homestead. They simply argue, under the point immediately being considered, that the probate court had no power to authorize a sale in the absence of a proper claim, sworn to, approved, etc. This might have been a valid objection in a direct attack upon the order of sale, a question which we need not decide, but it cannot serve as the basis for a collateral attack upon the order of sale.

The fourth point of error raises a question which is immaterial. Even if the purchaser was chargeable with notice of the homestead character of the property, the sale is not subject to collateral attack here, for the reasons already noted.

Appellants' fifth and sixth points of error relate to questions raised by their other points of error, so we need not discuss them.

Appellants in their brief comment on the fact that the administrator, in a report on the condition of the estate made to the probate court, on December 30, 1939, recited that $954 was deducted from the purchase price of the land in question, that the purchaser accepted title to the land subject to such indebtedness, and that the purchaser immediately paid $204 thereon, being the total amount due according to the terms of the note. None of the six points of error touches the matter.

Also, we fail to find anything either in plaintiffs' petition or in their brief which tends to show that they have been damaged, or that they have acquired any rights, by reason of the fact that the purchaser took the land subject to the lien instead of paying the amount of the lien to the administrator. There is no showing in the petition to the effect that the indebtedness is unpaid at this time. Plaintiffs simply have not sought any relief based upon the proposition that the purchaser has not paid the full amount of the purchase price, nor, as we have said, have they alleged that any part of the purchase price is unpaid at this time.

The judgment of the trial court is affirmed.